

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| UNITED STATES OF AMERICA | ) | Criminal No. 3:16-cr-155-JAG |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | |
| CRYSTAL CHARMAE JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The parties stipulate that allegations contained in the Counts One and Seven of the indictment and the following facts are true and correct, and that had this matter gone to trial, the United States would have proven each of them beyond a reasonable doubt:

1. Beginning prior to January 1, 2011 through on or about January 21, 2015, the exact dates being unknown to the Grand Jury, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, defendant CRYSTAL CHARMAE JACKSON did unlawfully and knowingly enter into an agreement, combination, and conspiracy with David Wayne Schneider (charged in this Court under docket number 3:15-cr-201-JRS) to defraud the United States Department of Treasury by obtaining and aiding to obtain the payment and allowance of false, fictitious, and fraudulent claims.

2. On or about February 1, 2013, in the Eastern District of Virginia and elsewhere, defendant CRYSTAL CHARMAE JACKSON did make and present to the Internal Revenue Service, part of the United States Department of Treasury a false, fictitious, and fraudulent claim, that is: a 2012 Tax return filed on behalf of S.T., falsely claiming $8,220 in business profits, a

dependent, and seeking a refund of $3,354.

3. During the time relevant to the conspiracy, multiple tax refund checks were deposited into bank accounts associated with Zimmerman Bail Bonding, a bail bonding company located in the Richmond, Virginia Metropolitan area owned and operated by David Wayne Schneider. Following the deposit of these refunds into the Zimmerman accounts, checks drawn on those accounts were written to JACKSON and to the taxpayers to whom the refunds were issued. Many of the checks were generated by the filing of tax returns containing false entries as to Schedule C income, dependents, and education expenses that inflated the refunds due to the taxpayers in question.

4. At trial, multiple witnesses would have identified Schneider or JACKSON as the individuals they hired to prepare the returns. For the most part, these individuals related that they were guaranteed refunds when they engaged JACKSON or Schneider to prepare the returns and that JACKSON held herself out as someone who guaranteed large refunds. They generally did not review the returns before they were filed and were unaware that the returns contained the false entries referenced previously. Several of the taxpayers would have testified that Schneider and JACKSON worked together and that Schneider was sometimes involved with taking information required to prepare returns or with the payment of their refunds. JACKSON charged as much as $1,000 for her services, a price she sometimes justified by pointing to the size of the refunds she was able to obtain for her clients. Most often, following the direction of the refund into the Zimmerman or some other account, JACKSON would deduct her fee before paying the remainder of the refund over to the client. JACKSON and Schneider prepared returns and met with clients at various places in Richmond, Virginia. The returns were filed

electronically using commercial tax preparation software. Both JACKSON and Schneider had clients who had retained them individually to prepare tax returns. Schneider and JACKSON did not work together exclusively and did not share all fees paid to them by clients for whom they prepared returns.

5. On January 21, 2015, various federal agencies executed a search warrant at Schneider's Chesterfield County home, which also served as the offices for Zimmerman Bail Bonding. On that same day, they interviewed JACKSON, who admitted having prepared false tax returns for certain individuals in the manner described above.

6. At trial, S.T. would have testified that JACKSON prepared her tax returns for the 2011 through 2013 tax years. Each of these tax returns contained false information regarding some combination of dependents, business profits, and education expenses.

7. When S.T. met with JACKSON regarding the preparation of her 2012 tax return, she provided JACKSON with a W-2 reflecting wages paid to S.T. from her regular employment. Although S.T. had a hairstyling business that generated a profit in 2012, the gross proceeds that business generated did not exceed $5,000. S.T. advised JACKSON of that fact and did not supply JACKSON with any documentation regarding the business. S.T. did not report to JACKSON that she had any dependents. S.T. was to pay JACKSON $1,000 for preparation of the return.

8. On February 1, 2013, JACKSON electronically filed a 2012 Tax return on behalf of S.T., falsely claiming $8,220 in net profit from a cosmetics business and that a child identified as S.P. was S.T.'s niece and dependent. The return sought a refund of $3,354. The refund generated was sent via direct deposit into a bank account that did not belong to S.T. JACKSON

3

transferred approximately $2,000 into S.T.'s bank account at some point following issuance of this refund.

9. S.P. is not S.T.'s niece; in fact, S.T. does not know S.P., and S.P. was never S.T.'s dependent.

10. For the purposes of calculating restitution and JACKSON's sentencing range under the United States Sentencing Guidelines, the parties agree that the loss attributable to her does not exceed $861,409.14. JACKSON acknowledges, however, that this agreement is not binding on the Court and that she will not be able to withdraw her guilty plea should the Court find a higher loss attributable to her at sentencing.

11. The actions taken by the defendant as described above were taken willfully, knowingly, and with the specific intent to violate the law. The defendant did not take those actions by accident, mistake, or with the belief that they did not violate the law. This statement of facts sets forth only those facts necessary to support the defendant's plea of guilty and does not necessarily relate all facts relevant to the charged offenses.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

By: /s/ Michael C. Moore
Michael C. Moore
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between myself and the United States, I stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Crystal Charmae Jackson
Defendant

I am CRYSTAL CHARMAE JACKSON's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

Nia A. Vidal, Esquire
Counsel for Defendant

5